UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MASSACHUSETTS BAY
TRANSPORTATION AUTHORITY,

      Plaintiff,

    v.

NATIONAL RAILROAD PASSENGER
CORP., d/b/a AMTRAK, and
NORTHEAST CORRIDOR
INFRASTRUCTURE AND
OPERATIONS ADVISORY
COMMISSION,

      Defendants.

Civil Action No. 16-10120

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY

## INTRODUCTION

Amtrak has demanded that plaintiff Massachusetts Bay Transit Authority ("MBTA"), a commuter railroad, pay nearly $29 million under the terms of a cost sharing policy developed by the Northeast Corridor Commission (also "NECC" and "the Commission"), a federal commission. (The policy establishes formulas for sharing the costs for infrastructure and services between Amtrak and commuter railroads along the corridor that runs from Boston to Washington, D.C.) The MBTA disputes that it owes Amtrak the money in light of a pre-existing agreement and the benefits that it (*i.e.*, the MBTA) provides to Amtrak. It has filed several constitutional claims and an Administrative Procedure Act ("APA") claim against

the NECC to cut the legs out from under the cost sharing policy – and, by extension, Amtrak's demand for payment.

The MBTA's wish to save $29 million is understandable.  But this Court is not the place for it to have its wish fulfilled.  A statute provides that if Amtrak and a commuter railroad (like the MBTA) cannot agree about how to share costs, the Surface Transportation Board ("STB"), an independent adjudicatory agency, "*shall* determine the appropriate compensation . . . after taking into consideration the [cost allocation] policy . . . ."  49 U.S.C. § 24905(c)(2) (emphasis added).  (Indeed, Amtrak has filed an action before the STB asking it to resolve the compensation dispute.  Amtrak's Petition for Relief Pursuant to 49 U.S.C. § 24905 ("Amtrak's Petition"), STB Finance Docket 36048 (June 24, 2016) (attached as Ex. 1).)  And make no mistake, though clothed in the language of the Constitution and the APA, this is a suit about compensation:  The constitutional and APA claims are merely the vehicle by which the MBTA has chosen to argue about the appropriate compensation in this Court.  But this Court is not part of the review framework created by Congress.  Not only should the claims against the NECC not start here, but they should never end up here:  Appeals from STB decisions go to the courts of appeals, not the district courts, as laid out in a finely reticulated statutory scheme.  *See, e.g.,* 28 U.S.C. §§ 2321, 2342(5), 2343, 2344, 2347.

To put a finer legal point on things, given the prescriptive language of the statute (*i.e.*, the STB "shall determine the appropriate compensation") and the detailed appellate review structure, "it is fairly discernible in the statutory scheme"

that Congress has created an exclusive remedial framework that generally displaces the district court with respect to claims related to compensation under the cost sharing policy. *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994).

Moreover, there is no reason to think that plaintiff's claims should be treated any differently than a run-of-the-mill cost-sharing policy related claim. Three considerations support this conclusion. *Id*. at 212-213. First, the MBTA will have access to meaningful judicial review because it can raise its constitutional claims in the Court of Appeals, if not at the STB. *See Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2137 (2012). Second, the MBTA's claims are not "wholly collateral" to the statutory review structure: That structure is aimed at resolving disputes about cost sharing between Amtrak and commuter railroads, and these claims are "the vehicle" (*id.* at 2139-40) by which the MBTA seeks to vindicate its position on compensation. Third, the STB has expertise that it can bring to bear on these issues (*id.* at 2140): It could weigh the value of the facilities and services that Amtrak and the MBTA provide each other and determine that they balance out, meaning that the MBTA owes Amtrak nothing. This determination would obviate the need for any court to decide plaintiff's constitutional claims.

Because Congress has created an exclusive remedial framework that plaintiff has not used, this case should be dismissed for lack of jurisdiction. *See, e.g.*, *Thunder Basin*, 510 U.S. 206, 218; *Elgin*, 121 S. Ct. 2140.

In the alternative, if the Court declines to dismiss the MBTA's suit, it should exercise its discretion to stay this case until the pending STB compensation

proceeding is resolved.  If the STB determines that no compensation is required

(and that decision withstands any judicial review), then this Court would not need

to expend resources deciding this case.  More specifically, the Court could avoid

resolving the constitutional questions raised by plaintiff's complaint, and under the

canon of constitutional avoidance, courts should avoid unnecessarily deciding

constitutional issues.  *United States v. Nat'l Treasury Employees Union ("NTEU")*,

513 U.S. 454, 478 (1995).  These factors – both alone and in combination – justify a

stay.

In short, the Court should dismiss this case for lack of jurisdiction or, in the

alternative, enter a stay until the STB resolves the pending administrative

proceeding.

## **BACKGROUND**

To better passenger rail service, Congress passed the Passenger Rail

Investment and Improvement Act of 2008 ("PRIIA" or "Act"), Pub. Law No. 110–

432, Div. B, 122 Stat 4848, 4921, § 212 (2008), and the Fixing America's Surface

Transportation Act ("FAST Act"), Pub. Law No. 114-94, § 11305, 129 Stat. 1312,

1656 (2015).  As part of this effort, Congress created the Northeast Corridor

Commission.  49 U.S.C. § 24905.  (The northeast corridor – from Boston to

Washington, D.C. – is the busiest rail corridor in the nation.)  The Commission is

made up of voting representatives from the U.S. Department of Transportation,

states comprising the northeast corridor (including Massachusetts), and Amtrak.

49 U.S.C. § 24905(a).

4

The Commission is charged with "develop[ing] a standardized policy for determining and allocating costs, revenues, and compensation for Northeast Corridor commuter rail passenger transportation . . . that use Amtrak facilities or services or that provide such facilities or services to Amtrak."  49 U.S.C. § 24905(c)(1).  When the statute mentions "allocating" costs, revenue, and compensation, it is talking about "allocating" these things between the entities that own a given piece of infrastructure and those that use it, as they are not always the same.  In Massachusetts, for example, Amtrak operates on tracks owned by the MBTA, Compl. ¶ 20.  (Amtrak, in exchange, provides services to the MBTA.  Compl. ¶ 90.)  In other parts of the Northeast corridor, the reverse is true:  The entities that provide commuter-rail service (as opposed to the long-distance service provided by Amtrak) operate on rails owned by Amtrak.  Compl. ¶ 23.  Owing to this circumstance, Amtrak and the commuter-railroads have typically entered into usage agreements specifying the terms on which one's trains can use the other's rails and related facilities.  Compl. ¶ 24.  After the Commission develops a new cost allocation policy, Congress has directed that Amtrak and commuter-railroads "*shall* implement new agreements for usage of facilities or services based on the" policy.  49 U.S.C. § 24905(c)(2) (emphasis added).

If Amtrak and the commuter railroad  "fail to implement such new agreements … or fail to comply with the policy," then "the Surface Transportation Board [STB] shall determine the appropriate compensation for such [usage of facilities and services] . . . after taking into consideration the [cost allocation policy],

as applicable." 49 U.S.C. § 24905(c)(2).  The STB is an independent adjudicatory agency, 49 U.S.C. § 1301(a), and it has long had a similar responsibility for determining the terms and compensation for rail usage agreements when Amtrak and the commuter railroads could not agree on them.  *See* 49 U.S.C. §§ 24903 (prior to FAST Act, the provision was found in § 24904) and 24308.  Orders of the STB are reviewed by the courts of appeal (on a petition for review), not the district court. *See* 28 U.S.C. §§ 2321, 2342(5).  The procedures related to the appeal are set out in detail, such as: venue, § 2343 (the D.C. Circuit or the circuit comprising the state of the petitioner's residency or principal place of business); the content of the petition, § 2344; the procedures for gathering additional facts, § 2347; and the legal effect of filing a petition, § 2349.

Consistent with the framework created by the PRIIA and the FAST Act, the NECC adopted a cost-allocation policy.  It passed by a vote of 15-2, with Massachusetts voting "no."  Compl. ¶ 51.  Based on the policy and statute, Amtrak has asserted that the MBTA owes it almost $29 million, and that this should be reflected in their usage agreement.  *Id.* ¶¶ 54, 61.  The MBTA contends that Amtrak is not entitled to such compensation in view of the Attleboro Line Agreement, which currently governs the parties' relationship, and the value Amtrak receives from the use of the MBTA's property.  *Id.* ¶ 63.  To undercut the basis of Amtrak's demands, the MBTA filed this suit in which it alleges that:  (1) the statutory provision creating the NECC violates the Appointments Clause, the separation of powers, and the due process clause; and (2) the policy violates the APA because it was not issued

after notice-and-comment rulemaking.[1]  Compl. ¶¶ 65-87.  Meanwhile, Amtrak has

filed a petition with the STB asking it to determine "the appropriate compensation"

between Amtrak and MBTA under 49 U.S.C. § 24905(c)(2), because MBTA has

refused to implement a new agreement based on the cost allocation policy.

Amtrak's Petition at 1-2.  The MBTA, in turn, has asked the STB to stay the

administrative proceeding pending resolution of this case.  *See* Petition to Hold

Proceeding in Abeyance Pending Parallel District Court Litigation ("MBTA's STB

Stay Br."), STB Finance Docket No. 36048 (Aug. 2, 2016) (attached as Ex. 2), at 3, 6.

## ARGUMENT

### I.    The MBTA's Claims Should Be Dismissed For Lack of Jurisdiction

Congress created an exclusive review framework for challenges – like

plaintiff's – to the Commission's cost allocation policy.  This review scheme obligates

plaintiff to start its legal journey in the STB, 49 U.S.C. § 24905, and seek any

review from a final order of the STB in the D.C. Circuit or the First Circuit, 28

U.S.C. §§ 2321, 2342, 2343.  Accordingly, the Court should dismiss the MBTA's

claims against the Commission for lack of jurisdiction.

Ordinarily, district courts have jurisdiction over suits raising federal

questions, such as whether a statute violates the Constitution.  *See* 28 U.S.C.

§ 1331.  But Congress can change that.  Congress can require that a plaintiff

exhaust his or her administrative remedies before invoking the jurisdiction of the

---

[1] The MBTA also alleges in Counts V and VI of the complaint that Amtrak breached the Attleboro Line Agreement and violated an implied covenant of good faith and fair dealing related to the same agreement.  Compl. ¶¶ 88-99.  Counts V and VI do not include claims against the NECC.

district court.  *E.g., Acosta-Ramirez v. Banco Popular de Puerto Rico*, 712 F.3d 14, 21 (1st Cir. 2013) (remanding case to district court with instructions to dismiss for lack of jurisdiction because administrative remedies had not been exhausted).  Or Congress can create an exclusive remedial framework that "displaces the plenary district court action entirely."  *Elgin v. U.S. Dep't of Treasury*, 641 F.3d 6, 9 (1st Cir. 2011), *aff'd* 132 S. Ct. 2126, 183 L. Ed. 2d 1 (2012).  Commonly, the alternative remedial framework created by Congress requires a plaintiff to raise its claims first with an agency before seeking review of the agency decision in the court of appeals. *See Elgin,* 132 S. Ct. at 2133-36; *Thunder Basin Coal Co.*, 510 U.S. at 207-09; *Jarkesy v. SEC,* 803 F.3d 9, 15 (D.C. Cir. 2015).  When such a framework exists, an action that has not charted a course through the administrative scheme must be dismissed for lack of jurisdiction.  *See, e.g., Thunder Basin*, 510 U.S. at 206, 218; *Elgin*, 121 S. Ct. at 2140.

Courts apply a two-part test to determine whether a plaintiff must direct its claims through an alternative review scheme.  First, they look to the intent of Congress:  Has it created an exclusive remedial scheme channeling review of some class of claims away from the district court?  That intention need not be expressed in big, bold letters.  Rather, the inquiry focuses on whether such intent is "fairly discernible in the statutory scheme."  *Thunder Basin Coal*, 510 U.S. at 207 (citation omitted).  Second, courts assess whether the litigant's claims are "of the type Congress intended to be reviewed within [the] statutory structure."  *Id.* at 212.

### A. Congress's Intent to Channel Challenges to the Cost Allocation Policy Is Fairly Discernible

It is fairly discernible that Congress intended challenges to the cost allocation policy to be handled by the STB and courts of appeal. "To determine whether Congress intended to preclude district court review of plaintiffs' claims, [courts] first examine the [statute] for explicit language of preclusion." *E. Bridge, LLC v. Chao*, 320 F.3d 84, 88 (1st Cir. 2003). Such language exists here. The statutory provision establishing the Commission and entrusting it with the authority to develop the cost allocation policy states that if Amtrak and the public authorities providing commuter rail services cannot agree to usage agreements based on the cost allocation policy, then "the STB *shall* determine the appropriate compensation for [ ] usage [of facilities and services on the Northeast Corridor] . . . after taking into consideration the [cost allocation] policy developed under paragraph (1)(A), as applicable." 49 U.S.C. § 24905(c)(2) (emphasis added). "[S]hall" is a "mandatory" word, "which normally creates an obligation impervious to judicial discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35, (1998); *see also Summit Packaging Sys., Inc. v. Kenyon & Kenyon*, 273 F.3d 9, 12 (1st Cir. 2001) (noting, in the context of interpreting a forum selection clause, that "shall" has a "mandatory sense").

Courts have interpreted less explicit language to require a plaintiff to air its claims first in an administrative forum. For example in *Thunder Basin* and *Jarkesy*, the Courts inferred Congress's intent that a plaintiff must channel its claims through the agency from the detailed nature of the review scheme crafted by

Congress.  *Thunder Basin*, 510 U.S. 207, 216; *Jareksy*, 803 F.3d at 16-17.  A similarly detailed structure exists here:  Congress has provided details about such things as the proper venue for an appeal, 28 U.S.C. § 2343; the content of a petition for review, § 2344; the procedures for gathering additional facts, § 2347; and the legal effect of filing a petition, § 2349.  But, in any case, no inference is necessary given Congress's use of the prescriptive term "shall" in § 24905(c)(2).  And there is no question that the term "shall" means that STB's jurisdiction is exclusive, and not just that the STB must decide the matter if presented with it.  The Supreme Court has held that "[g]enerally, when Congress creates procedures designed to permit agency expertise to be brought to bear on particular problems, those procedures are to be exclusive."  *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 489 (2010) (citation omitted).

There is also no doubt that the courts of appeal have exclusive jurisdiction to review an order from the STB addressing the cost allocation policy.  "The court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . .  all rules, regulations, or final orders of the Surface Transportation Board made reviewable by section 2321 of this title."  28 U.S.C. § 2342(5).  Section 2321 provides, so far as is relevant here, that "a proceeding to enjoin or suspend, in whole or in part, a rule, regulation, or order of the Surface Transportation Board shall be brought in the court of appeals . . . ."  Venue is appropriate in either the D.C. Circuit or the circuit court in which the petitioner resides or has its principal place of business.  28 U.S.C. § 2343.

Consolidating review in the STB and courts of appeal makes practical sense. Arguments about the relative value of services and facilities can be combined with constitutional and procedural challenges like those in this case, eliminating the possibility for duplicative proceedings and piecemeal resolution of compensation disputes between Amtrak and commuter railroads.  *See Elgin*, 121 S. Ct. at 2135-36 (holding that a channeling requirement is consistent with the purposes of the Civil Service Reform Act because it would eliminate the possibility of duplicative proceedings and inconsistent decisions).

### B.  Plaintiff's Claims Are the Type Congress Intended to Be Reviewed Within the Administrative-Appellate Review Framework

"To unsettle this presumption of initial administrative review—made apparent by the structure of the organic statute—requires a strong countervailing rationale."  *E. Bridge, LLC*, 320 F.3d at 89.  The Supreme Court has identified three questions for courts to consider when determining whether the claim at issue is of the type that Congress intended to be channeled through the administrative framework:  1) would the litigant would be deprived of meaningful judicial review if required to proceed through the administrative-appellate framework?; 2) is the suit wholly collateral to a statute's review provisions?; and 3) are the claims outside the agency's expertise?  *Free Enterprise*, 561 U.S. at 489–90.  An answer of "yes" to any of these questions is some indication that Congress would not have intended to displace district court jurisdiction for the claim at issue.  *See id*; *Jarkesy*, 803 F.3d at 9, 17 ("We do not understand those considerations to form three distinct inputs into a strict mathematical formula.  Rather, the considerations are general

guideposts useful for channeling the inquiry into whether the particular claims at issue fall outside an overarching congressional design."). But not all factors matter equally: The availability of meaningful judicial review is "the most critical thread." *Bebo v. SEC*, 799 F.3d 765, 774 (7th Cir. 2015); *accord Tilton v. SEC*, 824 F.3d 276, 282 (2d Cir. 2016); *Hill v. SEC*, --- F.3d ---, 2016 WL 3361478, at *8 (11th Cir. June 17, 2016).

In this case, the Court need not determine how to balance conflicting elements because they all support the conclusion that the MBTA must channel its claims through the STB. In other words, plaintiff would not be deprived of meaningful judicial review; the suit it not wholly collateral to the statute's review provisions; and the claims are not outside the agency's expertise.

## 1. Meaningful Judicial Review

The MBTA would have access to meaningful judicial review if it brought its claim first before the STB. As noted, a final order by the Board could be reviewed by the D.C. Circuit or First Circuit, which would have authority to consider MBTA's constitutional claims, APA claims, and compensation claims. 28 U.S.C. §§ 2321, 2342, 2343. The court of appeals could thus consider all of the claims MBTA seeks to put before this Court—and, therefore, the court of appeals may provide meaningful judicial review. *E.g., Elgin*, 132 S. Ct. at 2136-37. That plaintiff raises facial constitutional claims (Compl. ¶¶ 65-82) does not upset this conclusion. Even if the STB "could not decide the constitutionality of a federal law," *Elgin*, 132 S. Ct. at 2137, meaningful review would be available as long as the court of appeals could

resolve the MBTA's constitutional questions, *id.; see also Jarkesy,* 803 F.3d at 19

("Because Jarkesy's constitutional claims . . . can eventually reach an Article III

court fully competent to adjudicate them, it is of no dispositive significance whether

the Commission has the authority to rule on them in the first instance during the

agency proceedings."); *Bebo*, 779 F.3d at 773 (same); *Tilton*, 824 F.3d at 285 (same).

And the court of appeals can consider these constitutional questions.  *See Nat'l R.R.*

*Passenger Corp. v. Boston & Maine Corp.* 503 U.S. 407, 422 (1992) (considering and

rejecting constitutional challenge that the Interstate Commerce Commission – the

predecessor to the STB – refrained from addressing, *see Conveyance of B&M in*

*Conn. River Line in VT & NH,* 4 I.C.C. 2d 761, 771 (1988)).

　　In *Preseault v. Interstate Commerce Commission* (ICC), the ICC argued that

the Second Circuit lacked jurisdiction to rule on the facial constitutionality of a

statute because the agency could not do so.  853 F.2d 145, 148 (2d Cir. 1988).  The

court rejected the argument, after surveying the same jurisdictional statutes that

apply to this case, 28 U.S.C. §§ 2321 and 2342.  It held that "[a] party seeking

judicial review of an administrative action may ordinarily draw in question the

constitutionality of the statute under which the agency acted."  *Id.*  Moreover, the

court continued, "[a]n order of the ICC based on the plain wording of a statute –

even where the constitutionality of the statute is beyond the power of the ICC to

adjudicate – is nonetheless a decision of the ICC for the purposes of judicial review,

and the reviewing court may consider a constitutional challenge to the statute as it

affects the validity of the order."  *Id.* at 148-49.  *Preseault*'s logic applies to decisions

by the ICC's successor, the STB, which are heard in the court of appeals under the same statutes, § 2321 and § 2342. Thus, the court of appeals could consider MBTA's constitutional arguments, leaving no doubt about whether the MBTA has access to meaningful judicial review.[2]

    2. <u>Collaterality</u>

The MBTA's claims are not "wholly collateral" to the statute's review provisions. *Thunder Basin*, 510 U.S. at 212. Rather, the claims are the "vehicle by which" the MBTA seeks to upend the assertion that the MBTA owes Amtrak millions of dollars, a determination that Congress entrusted to the STB for review. *See Elgin*, 132 S.Ct. at 2139–40. If Amtrak or MBTA "fail to implement" a new agreement "based on the [Commission's] policy," then the STB will take the policy "into consideration" and "shall determine the appropriate compensation" for the parties. 49 U.S.C. § 24905(c)(2). The court of appeals may review the STB's compensation determination. 28 U.S.C. §§ 2321, 2342(5). But instead of awaiting the outcome of the process established by Congress to determine compensation, MBTA is attempting to use this suit to dispute the NECC's conclusion regarding compensation. This suit is not collateral to the statute's review provisions regarding compensation; it is an effort to supplant them.

The Supreme Court's decision in *Elgin* is instructive. Four federal employees lost their jobs because they had failed to register for the draft with the Selective

---

[2] The NECC is not a party to the STB proceeding and so would not be a party to the appeal. But the United States is a party to appeals from STB decisions, 28 U.S.C. § 2348, and it could vindicate the NECC's interests.

Service System. *Elgin*, 132 S. Ct. at 2131. They filed suit in district court challenging the constitutionality of the statute which establishes registration as a prerequisite to federal employment. *Id.* The government argued, and the First Circuit held, that the district court lacked jurisdiction because a statute, the Civil Service Reform Act ("CSRA"), required plaintiffs to litigate their claim first before the Merit System Protection Board ("MSPB"), and then submit any appeal to the Federal Circuit. *Elgin*, 641 F.3d at 13; *but see In Rhode Island Department of Environmental Management v. United States*, 304 F.3d 31, 36, 39 (1st Cir. 2002) (pre-*Elgin* case addressing *Thunder-Basin*). In the Supreme Court, the plaintiffs argued that they did not have to follow the administrative scheme because their facial constitutional challenges to the statute mandating registration as a prerequisite to federal employment were "wholly collateral" to the "types of day-to-day personnel actions adjudicated by the MSPB." *Elgin*, 132 S. Ct. at 2139. The Court disagreed. It noted that "petitioners' constitutional claims are the vehicle by which they seek to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned but for the adverse employment action." *Id.* at 2139-40. And, the Court continued, "a challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme." *Id.* at 2140.

Similarly here, plaintiff's constitutional claims are "the vehicle by which [it] seek[s] to reverse the [cost allocation decision]" and this kind of cost allocation decision is "the type of [ ] action regularly adjudicated by the [STB]." *See id.* at

2139-40.  Courts of appeals have subsequently adopted a similar analysis in dismissing for lack of jurisdiction constitutional challenges to the Securities and Exchange Commission's administrative review structure.  *Jarkesy*, 803 F.3d at 23; *Tilton*, 824 F.3d at 288.

The MBTA's claims are not collateral to the review framework for determining compensation under the cost allocation policy.  They are the MBTA's way of challenging the compensation demand made by Amtrak under the cost allocation policy.  But instead of litigating the compensation question before the STB as § 24905 requires, the MBTA has filed suit here.  This end-run of the statute should be rejected.

3.  <u>Agency Expertise</u>

Finally, considerations of administrative expertise suggest that Congress intended claims such as plaintiff's to be litigated before the STB.  When it comes to expertise, an agency's "relative level of insight into the merits of a constitutional question is not determinative."  *Jarkesy*, 803 F.3d at 28.  Rather, the question is whether the STB's "expertise can otherwise be brought to bear" on claims "that challenge the constitutionality of a statute."  *Elgin,* 132 S. Ct. at 2140.  It can.

The STB has "expertise in matters related to the economic regulation of railroads."  *CSX Transp., Inc. v. Williams*, 2005 WL 902130, at \*15 (D.D.C. Apr. 18, 2005), *rev'd on other grounds*, 406 F.3d 667 (D.C. Cir. 2005). More specifically, it has long been charged with determining the appropriate compensation for the use of tracks and facilities between Amtrak and other rail systems.  *See, e.g., In re Nat'l*

*R.R. Passenger Corp. Under 49 U.S.C. 24309(a)*, 3 S.T.B. 157, 1998 WL 1799020, at

*1 (May 29, 1998) ("prescribing the terms and compensation" for Amtrak's "access to

facilities of railroads within the Guilford Rail System" under 49 U.S.C. §

24308(a)(2)).

Exercising this expertise, the STB could determine that the MBTA, in fact,

owes Amtrak nothing for the use of facilities and services.  49 U.S.C. § 24905(c)(2)

(authorizing the STB to determine the "appropriate compensation" for the use of

tracks and facilities on the Northeast Corridor).  It could decide, for example, that

the track usage and dispatch rights provided to Amtrak by the MBTA offset the

value of dispatch and maintenance services provided by Amtrak.  MBTA's STB Stay

Br. at 3, 6.  Indeed, prior to the development of the cost allocation policy, the parties

had reached just that conclusion, as they had entered into an agreement in which

"for the most part neither party [was] obligated to pay the other any monetary

compensation in exchange for the access and services that each receives." *Id.* at 3-4.

A decision that no compensation is due would obviate the need to address

plaintiff's constitutional claims because they would be moot.  The Supreme Court

has recognized that this sort of exercise of expertise weighs in favor of channeling a

claim through an administrative framework. *Elgin*, 132 S. Ct. at 2140 (holding that

the MSPB could bring its expertise to bear because, among other things, it could

decide an employment law issue in such a way as to "avoid the need to reach [ ] constitutional claims").[3]

\* \* \* \* \* \*

It is fairly discernible that Congress generally intended for plaintiffs to channel challenges to the cost allocation policy through an exclusive remedial framework beginning in the STB (rather than the district court). And given the MBTA's access to judicial review, the relationship of its claim to the statutory scheme, and the STB's ability to bring its expertise to bear, there is no reason for the MBTA's claims to receive special treatment. The MBTA's claims should be dismissed for lack of subject matter jurisdiction.

## II.    In the Alternative, This Case Should Be Stayed

If the Court declines to dismiss this case for lack of jurisdiction, then it should stay the case pending resolution (including any appeals) of the administrative action before the STB. The Court, of course, has the authority to stay this case. *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936). It "is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* at 254. "Deciding whether to stay proceedings involves balancing the

---

[3] In the STB proceeding, the MBTA contends that the STB would have to slavishly apply the cost allocation policy, and thus would be unable to moot plaintiff's constitutional claims. MBTA's STB Stay Br. at 11. But this argument is flawed. The statute says simply that the STB must take the cost allocation policy "into consideration," 49 U.S.C. § 24905(c)(2), not that it must follow every jot and tittle of the policy. And as noted above, STB has wealth of experience in determining a fair allocation of costs, so it is both well suited to exercise discretion in this area and natural to conclude that Congress intended it to do so.

interests of the parties and the Court." *Bank of Am., N.A. v. WRT Realty, L.P.*, 769 F. Supp. 2d 36, 39–40 (D. Mass. 2011).

A stay is appropriate in this case to conserve judicial resources and avoid unnecessarily addressing constitutional questions. As discussed above, a decision by the STB that the MBTA does not owe Amtrak any money would moot this case. A stay pending resolution of the administrative matter, then, would allow the Court to avoid unnecessarily expending resources on this litigation. It would also allow the Court to avoid needlessly deciding the constitutional questions posed here. And given the well-established canon of constitutional avoidance, *NTEU*, 513 U.S. at 478 (noting that the Court has a policy of "avoiding [the] unnecessary adjudication of constitutional issues"), that fact alone supports entering a stay, *FTC v. Standard Oil Co. of California*, 449 U.S. 232, 244, (1980) (holding that plaintiff must pursue administrative remedies before going to court because "one of the principal reasons to await the termination of agency proceedings is to obviate all occasion for judicial review") (citation omitted); *A. Esteban & Co. v. Metro. Transp. Auth.*, 2003 WL 57003, at *2 (S.D.N.Y. Jan. 6, 2003) ("[T]he mere fact that the resolution of the agency proceeding could moot or significantly alter the case before us would be reason enough to stay the case.").

## **CONCLUSION**

For the reasons stated above, the Court should dismiss this case for lack of jurisdiction or, in the alternative, stay it pending resolution of the administrative matter awaiting decision before the STB.

Dated:  August 23, 2016     Respectfully submitted,

            BENJAMIN C. MIZER
            Principal Deputy Assistant Attorney
            General

            CARMEN M. ORTIZ
            United States Attorney

            JENNIFER D. RICKETTS
            Director, Federal Programs Branch

            CARLOTTA P. WELLS
            Assistant Director, Federal Programs
            Branch


            */s/ Justin M. Sandberg*
            JUSTIN M. SANDBERG, Ill. Bar. No.
            6278377
            JEAN LIN
            ADAM A. GROGG
            STEVEN A. MYERS
            MATTHEW J. BERNS
            U.S. Dept. of Justice, Civil Division,
            Federal Programs Branch
            20 Massachusetts Ave., N.W.
            Washington, DC 20530
            Phone:  (202) 514-5838
            Fax:  (202) 616-8202
            Email:  justin.sandberg@usdoj.gov
            *Counsel for Northeast Corridor*
            *Commission*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that true copies of the attached document and the accompanying exhibits were filed through the CM/ECF system and served upon the attorneys of record for each other party by notice of electronic filing on August 23, 2016.

<div style="margin-left: 50%;">

 s/ Justin M. Sandberg   
JUSTIN M. SANDBERG

</div>