## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————  )
MASSACHUSETTS BAY                        )
TRANSPORTATION AUTHORITY,                )
                                         )
                Plaintiff,               )        CIVIL ACTION NO.: 16-10120-MLW
                                         )
v.                                       )
                                         )
NATIONAL RAILROAD PASSENGER              )
CORP. d/b/a AMTRAK, and NORTHEAST        )
CORRIDOR INFRASTRUCTURE AND              )
OPERATIONS ADVISORY COMMISSION,          )
                                         )
                Defendants,              )
                                         )
                and                      )
                                         )
NATIONAL RAILROAD PASSENGER              )
CORP. d/b/a AMTRAK                       )
                                         )
                Counterclaim-Plaintiff,  )
                                         )
v.                                       )
                                         )
MASSACHUSETTS BAY                        )
TRANSPORTATION AUTHORITY,                )
                                         )
                Counterclaim-Defendant.  )
———————————————————————  )

### DEFENDANT NATIONAL RAILROAD PASSENGER CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM AGAINST PLAINTIFF MASSACHUSETTS BAY TRANSPORTATION AUTHORITY

In answer to the allegations in the Complaint filed by Plaintiff Massachusetts Bay

Transportation Authority ("MBTA"), Defendant National Railroad Passenger Corporation

("Amtrak"), by and through its attorneys, based upon personal knowledge as to its own actions

and upon information and belief as to the actions of others, alleges as follows:

**INTRODUCTION**

1.      Amtrak admits that it provides intercity rail passenger service between Boston, MA and Washington, D.C. and that it presently obtains access to the rail line between Boston and the Rhode Island border pursuant to the Attleboro Line Agreement with MBTA.  The remainder of Paragraph 1 of the Complaint states a legal conclusion for which no answer is required.  To the extent that any answer is otherwise required, Amtrak denies same.

2.      Amtrak admits that Congress created the Northeast Corridor Commission ("NECC") and tasked it with, among other things, developing a standardized policy for allocation of costs for operation and infrastructure on the Northeast Corridor.  Amtrak further admits that it has attempted to work cooperatively with MBTA to negotiate an amendment to the existing Attleboro Line Agreement to implement the standardized policy developed by the NECC and, during those negotiations, Amtrak suggested that it might have to petition the STB for a determination of appropriate compensation in order to comply with the federal statute if MBTA remained unwilling to negotiate an amendment that comported with PRIIA in good faith.  The remainder of Paragraph 2 of the Complaint states a legal conclusion for which no answer is required.  To the extent that any answer is otherwise required, Amtrak denies same.

3.      Paragraph 3 of the Complaint consists solely of characterizations of Plaintiff's Complaint, which speak for themselves, and legal conclusions for which no answer is required. To the extent that any answer is otherwise required, Amtrak denies same.

4.      Paragraph 4 of the Complaint states a legal conclusion for which no answer is required.  To the extent that any answer is otherwise required, Amtrak denies same.

5.      Paragraph 5 of the Complaint states a legal conclusion for which no answer is required.  To the extent that any answer is otherwise required, Amtrak denies same.

6.      Paragraph 6 of the Complaint states a legal conclusion for which no answer is required.  To the extent that any answer is otherwise required, Amtrak denies same.

7.      Paragraph 7 of the Complaint states a legal conclusion for which no answer is required.  To the extent that any answer is otherwise required, Amtrak denies same.

8.      Paragraph 8 of the Complaint states a legal conclusion for which no answer is required.  To the extent that any answer is otherwise required, Amtrak denies same.

9.      Paragraph 9 of the Complaint states a legal conclusion for which no answer is required.  To the extent that any answer is otherwise required, Amtrak denies same.

10.      Paragraph 10 of the Complaint consists solely of characterizations of Plaintiff's Complaint, which speak for themselves, and legal conclusions for which no answer is required. To the extent that any answer is otherwise required, Amtrak denies same.

**THE PARTIES**

11.      Paragraph 11 of the Complaint states a legal conclusion for which no answer is required, except that Amtrak admits that MBTA has its principal office and principal place of business in Boston, Massachusetts, and is a citizen of Massachusetts.

12.      Paragraph 12 of the Complaint states a legal conclusion for which no answer is required, except that Amtrak admits that it has its principal office and principal place of business in the District of Columbia, and is a citizen of the District of Columbia.

13.      Paragraph 13 of the Complaint purports to summarize PRIIA, which speaks for itself, and states a legal conclusion for which no answer is required.  To the extent that any answer is otherwise required, Amtrak denies same.

## JURISDICTION AND VENUE

14.     Paragraph 14 consists solely of characterizations of Plaintiff's Complaint, which speaks for itself.

15.     Paragraph 15 of the Complaint states a legal conclusion for which no answer is required.  To the extent that any answer is otherwise required, Amtrak denies same.

16.     Paragraph 16 of the Complaint states a legal conclusion for which no answer is required.  To the extent that Paragraph 16 purports to summarize the Attleboro Agreement, the agreement speaks for itself.

## FACTS RELATING TO THIS DISPUTE

17.     Amtrak admits the allegations contained in Paragraph 17.

18.     Amtrak is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 18, and therefore denies them.

19.     Amtrak admits that it provides long-distance passenger service between major metropolitan areas, including the high speed "Acela" service connecting cities such as Boston, New York, Philadelphia, and Washington, D.C.  Amtrak denies the remainder of the allegations contained in Paragraph 19.

20.     Amtrak admits that it and state commuter rail agencies often run some or all of their trains on the same rail lines and that both Amtrak and MBTA run some of their trains along the Attleboro Line, except it denies that MBTA runs all of its trains along numerous other lines that are not normally used by Amtrak.

21.     Amtrak is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 21 of the Complaint, and therefore denies them.

22.     Amtrak is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint, and therefore denies them, except that it admits that both MBTA and Amtrak value the right to dispatch trains running over the Attleboro Line.

23.     Amtrak denies the allegations contained in Paragraph 23.

24.     Amtrak admits the allegations contained in Paragraph 24.

25.     Paragraph 25 of the Complaint purports to summarize federal law, which speaks for itself, and states a legal conclusion for which no answer is required.  To the extent that any answer is otherwise required, Amtrak denies same.

26.     Paragraph 26 of the Complaint purports to summarize the terms of the Attleboro Line Agreement, which speaks for itself, and states a legal conclusion for which no answer is required.  Amtrak admits, however, that it entered into the Attleboro Line Agreement with MBTA on July 1, 2003 and that it has since been amended a number of times.

27.     Paragraph 27 of the Complaint purports to summarize the terms of the Attleboro Line Agreement, which speaks for itself, and states a legal conclusion for which no answer is required.

28.     Paragraph 28 of the Complaint purports to summarize the terms of the Attleboro Line Agreement, which speaks for itself, and states a legal conclusion for which no answer is required.

29.     Paragraph 29 of the Complaint purports to summarize the terms of the Attleboro Line Agreement, which speaks for itself, and states a legal conclusion for which no answer is required.

30.     Paragraph 30 of the Complaint purports to summarize the terms of the Attleboro Line Agreement, which speaks for itself, and states a legal conclusion for which no answer is required.

31.     Paragraph 31 of the Complaint purports to summarize the terms of the Attleboro Line Agreement, which speaks for itself, and states a legal conclusion for which no answer is required.

32.     Paragraph 32 of the Complaint purports to summarize the terms of the Attleboro Line Agreement, which speaks for itself, and states a legal conclusion for which no answer is required.

33.     Paragraph 33 of the Complaint purports to summarize the terms of the Attleboro Line Agreement, which speaks for itself, and states a legal conclusion for which no answer is required.

34.     Paragraph 34 of the Complaint purports to summarize the terms of the Attleboro Line Agreement, which speaks for itself, and states a legal conclusion for which no answer is required.

35.     Paragraph 35 of the Complaint purports to summarize PRIIA, which speaks for itself, and states a legal conclusion for which no answer is required.

36.     Paragraph 36 of the Complaint purports to summarize Section 212 of PRIIA, which speaks for itself, and states a legal conclusion for which no answer is required.

37.     Paragraph 37 of the Complaint purports to summarize 49 U.S.C. § 24905(a)(1), which speaks for itself, and states a legal conclusion for which no answer is required.

38.     Paragraph 38 of the Complaint purports to summarize 49 U.S.C. § 24905(a), which speaks for itself, and states a legal conclusion for which no answer is required.

39.     Paragraph 39 of the Complaint purports to summarize 49 U.S.C. § 24905, which speaks for itself, and states a legal conclusion for which no answer is required.

40.     Paragraph 40 of the Complaint purports to summarize 49 U.S.C. § 24905(c)(1), which speaks for itself, and states a legal conclusion for which no answer is required.

41.     Paragraph 41 of the Complaint purports to summarize 49 U.S.C. § 24905(c)(1), which speaks for itself, and states a legal conclusion for which no answer is required.

42.     Paragraph 42 of the Complaint purports to summarize 49 U.S.C. § 24905(c)(2), which speaks for itself, and states a legal conclusion for which no answer is required.

43.     Paragraph 43 of the Complaint purports to summarize 49 U.S.C. § 24905(c), which speaks for itself, and states a legal conclusion for which no answer is required.

44.     Paragraph 44 of the Complaint purports to summarize the FAST Act, which speaks for itself, and states a legal conclusion for which no answer is required.

45.     Paragraph 45 of the Complaint purports to summarize 49 U.S.C. § 24905(c), which speaks for itself, and states a legal conclusion for which no answer is required.

46.     Paragraph 46 of the Complaint purports to summarize the FAST Act, which speaks for itself, and states a legal conclusion for which no answer is required.

47.     Paragraph 47 of the Complaint purports to summarize the FAST Act, which speaks for itself, and states a legal conclusion for which no answer is required.

48.     Paragraph 48 of the Complaint purports to summarize the FAST Act, which speaks for itself, and states a legal conclusion for which no answer is required.

49.     Amtrak admits that the NECC spent several years developing the standardized policy required by 49 U.S.C. § 24905, and that it established a Cost Allocation Committee to assist in this effort.  Amtrak denies the remaining allegations in Paragraph 49 of the Complaint.

50.     Paragraph 50 of the Complaint states a legal conclusion for which no answer is required.

51.     Amtrak admits the allegations in Paragraph 51 of the Complaint.

52.     Paragraph 52 of the Complaint purports to summarize the terms of the Cost Sharing Policy, which speaks for itself, and states a legal conclusion for which no answer is required.

53.     Amtrak denies the allegations in Paragraph 53 of the Complaint.

54.     Amtrak denies the allegations in Paragraph 54 of the Complaint, except it admits that MBTA owns the Attleboro Line.

55.     Paragraph 55 of the Complaint purports to summarize the terms of the Cost Sharing Policy, which speaks for itself, and states a legal conclusion for which no answer is required.

56.     Paragraph 56 of the Complaint purports to summarize the terms of the Cost Sharing Policy, which speaks for itself, and states a legal conclusion for which no answer is required.

57.     Paragraph 57 of the Complaint purports to summarize the terms of the Cost Sharing Policy and the Attleboro Line Agreement, which speak for themselves, and states a legal conclusion for which no answer is required.

58.     Paragraph 58 of the Complaint purports to summarize the terms of the Cost Sharing Policy and 49 U.S.C. § 24905, which speak for themselves, and states a legal conclusion for which no answer is required.

59.     Paragraph 59 of the Complaint purports to summarize the terms of the Cost Sharing Policy and the Attleboro Line Agreement, which speak for themselves, and states a legal

conclusion for which no answer is required.  To the extent that Paragraph 59 purports to summarize Amtrak's position, Amtrak denies the allegation.  Amtrak, admits, however, that both MBTA and Amtrak value the right to dispatch trains running over the Attleboro Line.

60.     Paragraph 60 of the Complaint purports to summarize the terms of the Cost Sharing Policy, which speaks for itself, and states a legal conclusion for which no answer is required.

61.     Amtrak denies the allegations contained in Paragraph 61 of the Complaint, except that it admits that the Commission adopted the interim Policy in July 2015, and Amtrak sought to work cooperatively with MBTA to subsequently amend the Attleboro Line Agreement.

62.     Amtrak admits that it sought to implement the terms of the Cost Sharing Policy by working cooperatively with MBTA, but denies MBTA's characterizations of its actions and all other allegations in Paragraph 62 of the Complaint.

63.     Amtrak denies the allegations in Paragraph 63 of the Complaint.

64.     Amtrak denies the allegations contained in Paragraph 64 of the Complaint, except that it admits that the parties engaged in extensive discussions to resolve this dispute short of litigation, but those negotiations failed to result in a resolution.

## CLAIMS FOR RELIEF
## COUNT ONE: VIOLATION OF THE APPOINTMENTS CLAUSE

65.     Paragraph 65 contains no allegations for Amtrak to admit or deny.  To the extent that any answer may be required, Amtrak denies the allegations in Paragraph 65 and incorporates by reference its responses to Paragraphs 1-64 of the Complaint.

66.     Paragraph 66 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 66 of the Complaint.

67.     Paragraph 67 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 67 of the Complaint.

68.     Paragraph 68 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 68 of the Complaint.

69.     Paragraph 69 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 69 of the Complaint.

70.     Paragraph 70 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 70 of the Complaint.

71.     Paragraph 71 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 71 of the Complaint.

## COUNT TWO: VIOLATION OF THE SEPARATION OF POWERS

72.     Paragraph 72 contains no allegations for Amtrak to admit or deny.  To the extent that any answer may be required, Amtrak denies the allegations in Paragraph 72 and incorporates by reference its responses to Paragraphs 1-71 of the Complaint.

73.     Paragraph 73 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 73 of the Complaint.

74.     Paragraph 74 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 74 of the Complaint.

75.     Paragraph 75 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 75 of the Complaint.

76.     Paragraph 76 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 76 of the Complaint.

## COUNT THREE: VIOLATION OF THE DUE PROCESS CLAUSE

77.     Paragraph 77 contains no allegations for Amtrak to admit or deny.  To the extent that any answer may be required, Amtrak denies the allegations in Paragraph 77 and incorporates by reference its responses to Paragraphs 1-76 of the Complaint.

78.     Paragraph 78 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 78 of the Complaint.

79.     Paragraph 79 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 79 of the Complaint.

80.     Paragraph 80 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 80 of the Complaint.

81.     Paragraph 81 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 81 of the Complaint.

82.     Paragraph 82 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 82 of the Complaint.

**COUNT FOUR: VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT**

83.     Paragraph 83 contains no allegations for Amtrak to admit or deny.  To the extent that any answer may be required, Amtrak denies the allegations in Paragraph 83 and incorporates by reference its responses to Paragraphs 1-82 of the Complaint.

84.     Paragraph 84 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 84 of the Complaint.

85.     Paragraph 85 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 85 of the Complaint.

86.     Paragraph 86 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 86 of the Complaint.

87.     Paragraph 87 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 87 of the Complaint.

## COUNT FIVE: BREACH OF CONTRACT

88.     Paragraph 88 contains no allegations for Amtrak to admit or deny.  To the extent that any answer may be required, Amtrak denies the allegations in Paragraph 88 and incorporates by reference its responses to Paragraphs 1-87 of the Complaint.

89.     Amtrak admits the allegations contained in Paragraph 89.

90.     Paragraph 90 purports to summarize the terms of the Attleboro Line Agreement, which speaks for itself.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 90 of the Complaint.

91.     Paragraph 91 purports to summarize the terms of the Attleboro Line Agreement, which speaks for itself.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 91 of the Complaint.

92.     Amtrak denies the allegations contained in Paragraph 92 of the Complaint.

93.     Amtrak denies the allegations contained in Paragraph 93 of the Complaint.

94.     Amtrak denies the allegations contained in Paragraph 94 of the Complaint.

95.     Paragraph 95 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 95 of the Complaint.

## COUNT SIX: VIOLATION OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

96.     Paragraph 96 contains no allegations for Amtrak to admit or deny.  To the extent that any answer may be required, Amtrak denies the allegations in Paragraph 96 and incorporates by reference its responses to Paragraphs 1-95 of the Complaint.

97.     Paragraph 97 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 97 of the Complaint.

98.     Amtrak denies the allegations contained in Paragraph 98, except admits that it has attempted to work cooperatively with MBTA to negotiate an amendment to the existing Attleboro Line Agreement to implement the standardized policy developed by the NECC.

99.     Paragraph 99 states a legal conclusion for which no answer is required.  To the extent that any answer may be required, Amtrak denies the allegations contained in Paragraph 99 of the Complaint.

## PRAYER FOR RELIEF

Amtrak denies that Plaintiff MBTA is entitled to any of the relief requested in the Complaint.

## SPECIAL AND AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of primary jurisdiction.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims are premature and not ripe for adjudication.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, for failure to state a claim.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of impossibility.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches.

**SIXTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the doctrine of estoppel.

**EIGHTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

**NINTH AFFIRMATIVE DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the doctrine of *in pari delicto*.

**COUNTERCLAIMS**

For its counterclaims herein, counterclaim-plaintiff National Railroad Passenger Corporation ("Amtrak"), by and through its attorneys, upon personal knowledge as to its own actions and upon information and belief as to the actions of counterclaim-defendant Massachusetts Bay Transportation Authority ("MBTA"), alleges as follows:

**NATURE OF COUNTERCLAIM**

1.      This counterclaim arises out of MBTA's persistent inability and/or refusal to timely pay Amtrak invoices for services rendered under the parties' July 1, 2003 agreement for the use and maintenance of MBTA's Attleboro line (the "Attleboro Line Agreement").  At MBTA's request and authorization, Amtrak provided certain engineering, maintenance, design, flagging, and construction services to MBTA pursuant to the Attleboro Line Agreement based upon MBTA's contractual promise to timely reimburse Amtrak for all actual costs associated with such work within 30 days.  Amtrak promptly submitted detailed and accurate invoices for

the requested services, and MBTA has simply failed to honor its contractual payment

responsibilities by refusing to reimburse Amtrak for such costs as agreed.

       2.      MBTA's failure to reimburse Amtrak for work that it requested and authorized

under the Attleboro Agreement has become a significant problem in recent years.  Indeed, some

of the past-due, unpaid invoices that MBTA refuses to pay date back to 2011 and, despite

Amtrak's persistent efforts to secure payment, MBTA has been unwilling to honor its contractual

payment responsibilities.  As a result, the amounts owed to Amtrak have continued to pile up.

Indeed, as of the filing of this counterclaim, MBTA owes Amtrak at least $175,106.27 in unpaid,

past-due invoices, plus contractually mandated interest, under the Attleboro Agreement.  And the

total amount continues to rise with each passing day.

       3.      MBTA's refusal to honor its contractual payment obligations has resulted in

financial harm to Amtrak, which could potentially jeopardize Amtrak's ability to provide rail

service in Massachusetts.  Amtrak depends on timely payments from MBTA for services

rendered to ensure its financial stability, fund its operations, and provide service to rail customers

traveling to and from Massachusetts.  No business partner should have to wait over *five years* to

receive payment on a valid, authorized, and undisputed invoice that is contractually required to

be paid within 30 days.  Nor can a service provider be expected to continue to do business with a

chronically delinquent business partner who refuses to pay its bills indefinitely, thereby

effectively subsidizing the business partner with free service while jeopardizing its own financial

health.  Having exhausted its numerous efforts to secure payment, Amtrak is now left with no

choice but to seek a remedy for MBTA's breach of the Attleboro Line Agreement in this action.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over Amtrak's counterclaim pursuant to 28 U.S.C.

§1332 and 28 U.S.C. §1367.

5.     This Court has diversity and supplemental jurisdiction over Amtrak's

counterclaim.  The parties have complete diversity of citizenship, and the amount in controversy

exceeds $75,000, exclusive of interest and costs.

6.     Venue is proper in this district, with respect to Amtrak's counterclaim, pursuant to

28 U.S.C. §1391.

## PARTIES

7.     Counterclaim-plaintiff Amtrak is a citizen of the District of Columbia, with its

principal place of business in the District of Columbia. 49 U.S.C. § 24301(b).

8.     Counterclaim-defendant MBTA is a citizen of Massachusetts, with its principal

place of business in Boston, Massachusetts.

## FACTUAL ALLEGATIONS

9.     On July 1, 2003, Amtrak and MBTA entered into the Attleboro Line Agreement,

which has since been amended five times.  The Attleboro Line Agreement grants Amtrak access

and dispatching rights to the rail line owned by MBTA between Boston and the Rhode Island

border (the "Attleboro Line") – a critical segment of Amtrak's intercity rail passenger service

between Boston, MA and Washington, D.C. (the "Northeast Corridor") – in exchange for

Amtrak's agreement to provide MBTA with certain dispatch and maintenance services on the

Attleboro Line.

10.     The Attleboro Line Agreement provides a mechanism for MBTA to request that

Amtrak perform certain additional work on the line and a process for approval and

reimbursement of expenses incurred by Amtrak in performing such work.  Specifically, under

Section 9.1, "at the request of the MBTA," Amtrak may "perform engineering work and certain

improvements" on the Attleboro Line, including on "track, surface, subsurface, and aerial

property (including utilities), tunnels, bridges and related structures, communication and signal

systems, utilities, drainage systems, fencing, walls, and tunnel ventilation systems owned or

controlled by the MBTA on the Attleboro Line." Agreement §9.1(a) and Definitions.  Such

services are referred to as "force account work" in the Attleboro Line Agreement.

11.     MBTA initiates all force account work under the Attleboro Line Agreement by

delivering to Amtrak a Projection Initiation ("PI") or Change Order Form ("CO"), including a

description of the work to be performed, as well as any plans, specifications and requirements.

Agreement §9.2(a).  Once the PI and/or CO is completed and signed by designated

representatives of both parties, the Attleboro Line Agreement specifies that it "shall constitute an

agreement to perform" the requested work.  Agreement §9.4.

12.     Amtrak is compensated for such services through an invoicing process.  Amtrak is

required to submit an invoice for services rendered to MBTA with supporting documentation,

including a description of the services performed and an itemized account of reimbursable

expenses incurred.  Agreement §3.2.  MBTA is then required to pay any undisputed amounts that

have been invoiced from Amtrak within 30 days.  *Id.*  Any wamount in any invoice that is not

paid within 30 days accrues interest at the rate of the Prime Rate published in the Wall Street

Journal plus one percent (1%).  *Id.*

13.     The Attleboro Line Agreement also provides a mechanism for MBTA to request

that Amtrak perform maintenance services on the line as requested of MBTA by freight

railroads, such as CSX, that also operate on the line.   Although not required, Amtrak typically

provides MBTA with an invoice after the requested work is completed.  The freight railroads then pay MBTA for such services and, pursuant to Section 3.4 of the Attleboro Line Agreement, MBTA is then required to "remit" such fees to Amtrak within 30 days.  Such services are referred to as "third party trackage fees" in the Attleboro Line Agreement.

14.     The Attleboro Line Agreement also incorporates an Amendment executed in March 2004 reflecting an agreement between the parties for Amtrak to provide certain maintenance services relating to an access improvement project in Pawtucket, Rhode Island. Section 2 of the Amendment adds a new subsection 3.8(b) to the Attleboro Line Agreement, which requires MBTA to compensate Amtrak for any costs incurred to maintain the improvements "on the same basis" that it compensates Amtrak for force account work under Section 3.2 of the Attleboro Line Agreement, including the 30-day payment requirement.

15.     Throughout the duration of the Attleboro Line Agreement, MBTA has consistently requested that Amtrak provide force account work services, including (a) flagging and protective services during MBTA's construction projects (*e.g.* the Ruggles Station Platform Project and the Mansfield Station Pedestrian Accessibility Improvement Project) and for incidental MBTA projects (*e.g.* cable pulls at Back Bay and Cabot Yard Stations, bridge and site inspections, surveys); (b) reviewing MBTA's designs and plans for such projects; and (c) installing a new work station for the Worcester Line Dispatching Project at South Station.

16.     Throughout the duration of the Attleboro Line Agreement, MBTA has also requested that Amtrak perform maintenance services on behalf of third-party freight railroads on the Attleboro Line and with respect to the Pawtucket access improvement project.

17.     Amtrak has obliged each of MBTA's requests and performed the requested work expecting reimbursement as contractually required.  All work has been performed with MBTA's

authorization and was completed as requested.  MBTA has never claimed that the work was not performed or raised an issue with the quality of the work.

18.    For each of the outstanding invoices, Amtrak presented MBTA with itemized invoices in the required format and manner.  MBTA has never disputed the form of the invoices nor that the invoiced amounts were valid and due to Amtrak.

19.    Amtrak has consistently worked with MBTA to answer any questions it may have about the invoices and to explain each of the invoices and provide documentation when requested.

20.    Although the timely payment of invoices has been a problem since the outset of the Agreement, the issue came to a head in 2014 when the total amount of outstanding invoices began piling up to an unacceptable degree.

21.    After several months of unsuccessful conference calls and meetings to resolve the issue, Amtrak escalated the payment dispute on December 5, 2014 and formally invoked the dispute resolution procedures outlined in Section 25.1 of the Attleboro Line Agreement in an attempt to secure payment for the past-due, unpaid invoices. A copy of the December 5, 2014 Notice of Claim is attached as Exhibit A.

22.    The December 5, 2014 dispute notice letter elevated into the formal dispute resolution process three different sets of Amtrak invoices totaling $172,602.81 under the Attleboro Line Agreement.  The letter was signed by Amtrak's Senior Director for the Northeast Corridor, Customer Management & Sales, and was directed to MBTA's Senior Director of Rail Transportation as required by Section 25.1 of the Attleboro Line Agreement.

23.    Amtrak made numerous subsequent attempts, in good faith, to secure payment of the remaining invoices pursuant to the dispute resolution process.  On January 16, 2015, the

parties met in MBTA's offices and reached an agreement in principle to resolve the unpaid

invoices.  Based on those discussions, a draft written settlement agreement was prepared.

Amtrak provided MBTA with the draft settlement agreement on February 5, 2015.  MBTA,

however, steadfastly refused to reduce the agreement reached on January 16, 2015 into writing.

Instead, MBTA stalled and delayed any resolution of the matter for months.

24.     Amtrak continued its attempts to resolve the matter in a series of telephone

conferences and meetings with high-level MBTA representatives, but was unsuccessful.

Ultimately, in October 2015, MBTA advised Amtrak that it would not negotiate and execute any

written settlement agreement.  Instead, MBTA suggested an alternative, informal approach to

resolve Amtrak's claim.

25.     Acknowledging the past due invoices, MBTA subsequently made partial payment

of the outstanding amounts due to Amtrak under the Attleboro Agreement, but the partial

payment covered only a small portion of MBTA's rapidly increasing list of past due, unpaid

invoices.  Indeed, MBTA continued to refuse to pay 32 invoices totaling $149,606.27 without

explanation or justification.

26.     After several months of additional discussion, Amtrak escalated the dispute to the

highest levels of MBTA pursuant to Section 25.2 of the Attleboro Line Agreement on July 22,

2016.  A copy of the July 22, 2016 letter is attached as Exhibit B.  Amtrak requested a written

response.

27.     To date, MBTA has provided no such response.

28.     Notably, MBTA has never disputed that any of the 32 invoices totaling

$149,606.27 were valid and owed to Amtrak.  Instead, it has simply refused to honor its

contractual obligation under the Attleboro Line Agreement to pay them.

29.     MBTA has also refused to pay interest on past due invoices as mandated by Section 3.2 of the Attleboro Line Agreement.  The total amount of interest on all such invoices to date is at least $25,500 and continues to increase each day that the invoices remain unpaid.

30.     Amtrak has exhausted every effort to resolve this dispute short of litigation.  But, after over two years of trying in vain to secure payment from MBTA, it has no choice but to institute this action to recover the monies owed to Amtrak for costs incurred in providing work and services requested and authorized by MBTA.

## COUNT ONE – BREACH OF THE ATTLEBORO LINE AGREEMENT

31.     Amtrak realleges and incorporates by reference the allegations of Paragraphs 1-30 as if set forth fully herein.

32.     The Attleboro Line Agreement, including all amendments, is an existing, valid contract between Amtrak and MBTA.

33.     At MBTA's request, Amtrak provided force account work services to MBTA pursuant to valid PIs and COs under Section 9 of the Attleboro Line Agreement.

34.     Subsequently, Amtrak provided MBTA with timely, accurate invoices for such services pursuant to Section 3.2 of the Attleboro Line Agreement.

35.     The Attleboro Line Agreement obligates MBTA to pay Amtrak's invoices for force account work services rendered within 30 days.

36.     At MBTA's request, Amtrak provided certain switch maintenance services requested by MBTA on behalf of third-party freight railroads.

37.     Subsequently, Amtrak provided MBTA with timely, accurate invoices for such services.

38.     Section 3.4 of the Attleboro Line Agreement obligates MBTA to remit payment on Amtrak's invoices for third-party trackage services within 30 days.

39.     At MBTA's request, Amtrak provided maintenance services requested by MBTA with respect to an access improvement project in Pawtucket, RI pursuant to the First Amendment to the Attleboro Line Agreement.

40.     Subsequently, Amtrak provided MBTA with timely, accurate invoices for such services.

41.     Sections 3.4 and 3.8 of the Attleboro Line Agreement obligate MBTA to pay Amtrak's invoices for its work on the access improvement project in Pawtucket, RI within 30 days.

42.     MBTA has either ignored or refused to pay any of the aforementioned invoices within 30 days as required by the Attleboro Line Agreement, which has caused Amtrak to suffer damages.

43.     The total amount of authorized, past-due, and unpaid invoices is currently $149,606.27.

44.     Interest is mandatory on invoices that remain unpaid after 30 days under Section 3.2 of the Attleboro Line Agreement.  The total amount of interest on the past-due, unpaid invoices accrued as of the filing of this counterclaim is at least $25,500 and continues to increase each day that the invoices remain unpaid.

45.     MBTA has breached the Attleboro Line Agreement by failing to pay Amtrak the contractually agreed amount of at least $175,106.27.

46.     Amtrak has exhausted all of the dispute resolution steps contemplated by Section 25 of the Attleboro Line Agreement prior to bringing this action.

## COUNT TWO – BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

47.     Amtrak realleges and incorporates by reference the allegations of Paragraphs 1-30 as if set forth fully herein.

48.     The Attleboro Line Agreement is an existing, valid contract between Amtrak and MBTA.

49.     The Attleboro Line Agreement contains an implied covenant of good faith and fair dealing.

50.     MBTA is obliged by the implied covenant of good faith and fair dealing to honor its contractual obligations in good faith and to not attempt to shift costs to Amtrak by consistently requesting Amtrak to provide services and then refusing to pay for such services. Nor is it consistent with the implied covenant of good faith and fair dealing for MBTA to take advantage of Amtrak as a business partner by intentionally delaying payment on valid invoices for as long as possible in order to help MBTA manage its own financial situation, which only serves to force Amtrak to subsidize MBTA's operations and create financial difficulties for Amtrak.

51.     MBTA's repeated failure to pay Amtrak for services rendered over a five-year span is not consistent with the implied covenant of good faith and fair dealing and contrary to the parties' intended and agreed expectations regarding the performance of the services at the time the Attleboro Line Agreement was signed and the subsequent work was agreed upon.

52.     MBTA's repeated failure to pay Amtrak for services rendered over a five-year span has caused Amtrak to suffer damages of at least $175,106.27.

## PRAYER FOR RELIEF

WHEREFORE, Counterclaim-Plaintiff Amtrak respectfully requests the following relief:

- A declaratory judgment that MBTA is in breach of the Attleboro Line Agreement;

- An award of actual damages of at least $175,106.27, but in an amount to be determined at trial;

- Pre- and post-judgment interest;

- Reasonable fees and costs incurred in bringing this action;

- Such other and further relief as the Court deems just and proper.


August 23, 2016                          Respectfully Submitted,

                                         _____/s/ *Ryan P. Phair*_____
                                         Ryan P. Phair
                                         Neil K. Gilman
                                         HUNTON & WILLIAMS LLP
                                         2200 Pennsylvania Avenue, N.W.
                                         Washington, DC 20037
                                         rphair@hunton.com
                                         ngilman@hunton.com
                                          (202) 955-1500

                                         Nicholas M. Kelley, BBO #265640
                                         KOTIN, CRABTREE & STRONG
                                         One Bowdoin Square
                                         Boston, MA 02114
                                         nkelley@kcslegal.com
                                         (617) 227-7031

                                         *Counsel for National Railroad*
                                         *Passenger Corporation (Amtrak)*

## <u>CERTIFICATION OF SERVICE</u>

I, Ryan P. Phair, hereby certify that, on August 23, 2016, I caused this document to be

filed through the ECF system, and notice will be sent electronically to the registered participants

as identified on the Notice of Electronic Filing (NEF).

*/s/ Ryan P. Phair*
Ryan P. Phair
